FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RAYNA A., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[1] <br><br> Defendant. | No. 2:23-CV-00173-JAG <br><br> ORDER GRANTING PLAINTIFF'S MOTION |

**BEFORE THE COURT** is Plaintiff's Opening Brief and the Commissioner's Brief in response. ECF No. 9, 11. Attorney Chad Hatfield represents Rayna A. (Plaintiff); Special Assistant United States Attorney Edmund Darcher represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge by operation of Local Magistrate Judge Rule (LMJR) 2(b)(2) as no party returned a Declination of Consent Form to the Clerk's Office by the established deadline. ECF No. 2. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion and **DENIES** Defendant's Motion.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the named Defendant.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

I. **JURISDICTION**

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income on July 23, 2020, alleging amended onset of disability since July 23, 2020.[2]  Tr. 19, 133, 287-300.  The applications were denied initially and upon reconsideration.  Tr. 200-08, 211-24.  Administrative Law Judge (ALJ) Lori Freund held a hearing on December 2, 2022, Tr. 70-110, and issued an unfavorable decision on January 27, 2023.  Tr. 16-38.  Plaintiff requested review by the Appeals Council and the Appeals Council denied the request for review on April 12, 2023.  Tr. 1-6.  The ALJ's January 27, 2023 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on June 16, 2023.  ECF No. 1.

II. **STATEMENT OF FACTS**

The facts of the case are set forth in detail in the transcript of proceedings and the ALJ's decision and only briefly summarized here.  Plaintiff was born in 1984 and was 34 years old on the alleged disability onset date.  Tr. 31.  She has a high school diploma and previous employment included work as a home attendant.  *Id*.

---

[2] At the hearing, on the advice of her representative, Plaintiff amended her alleged onset of disability date to July 23, 2020, the date her applications were filed.  Tr. 19, 75.  As a result, the ALJ found Plaintiff was not entitled to disability benefits under Title II, as her alleged onset date was after her date last insured; and the ALJ dismissed Plaintiff's Title II claim and proceeded with the decision on her Title XVI claim.  Tr. 19, 33.

### III. STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

### IV. SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the claimant

bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work.  20 C.F.R. § 416.920(a)(4).  If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show: (1) the claimant can make an adjustment to other work; and (2) the claimant can perform other work that exists in significant numbers in the national economy.  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).  If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled.  20 C.F.R. § 416.920(a)(4)(v).

## V.     ADMINISTRATIVE DECISION

On January 27, 2023, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.  Tr. 16-38

At **step one**, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date.  Tr. 22.

At **step two**, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease and stenosis of the cervical spine and lumbar spine; congestive heart failure, with preserved ejection fraction; fibromyalgia; peripheral neuropathy; diabetes mellitus; and morbid obesity.  *Id*.

At **step three**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 24.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform sedentary work, with the following limitations:

> [Plaintiff] is limited to lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk for up to two hours in an eight-hour workday; sit for at least six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; never kneel, crouch, or crawl; occasionally

climb ramps/stairs, up to one flight and with use of a handrail; occasionally balance and stoop; and frequent use of foot controls bilaterally.  The [Plaintiff] is further limited to avoid all exposure to unprotected heights, hazardous machinery, and working around any type of hazard.  Moreover, [Plaintiff] is limited to avoid concentrated exposure to extreme cold; extreme heat; excessive vibrations; pulmonary irritants such as fumes, odors, dusts, gases, etc.; and humidity/wetness.

Tr. 26.

At *step four*, the ALJ found Plaintiff was unable to perform past relevant work.  Tr. 31.

At *step five*, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of food and beverage order clerk; document preparer; and charge account clerk.  Tr. 32.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from at any time from the alleged onset date through the date of the decision.  Tr. 33.

## VI.    ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability benefits under Title XVI of the Social Security Act.  The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff raises the following issues for review: (1) whether the ALJ properly evaluated Plaintiff's testimony; (2) whether the ALJ properly evaluated the medical opinion evidence; (3) whether the ALJ conducted a proper step-three analysis; and (4) whether the ALJ conducted a proper step-five analysis.  ECF No. 9 at 5.

## VII. DISCUSSION

### A. Subjective Complaints.

Plaintiff contends the ALJ improperly rejected Plaintiff's symptom complaints. ECF No. 9 at 16-20.

It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews,* 53 F.3d at 1039. The ALJ's findings, however, must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester* at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Here, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 26-27.

### 1. *Inconsistent with Objective Medical Evidence.*

The ALJ found that the objective medical evidence did not support the degree of limitation alleged by Plaintiff. Tr. 27-28. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v.*

*Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart,* 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

      Here, the ALJ noted Plaintiff's diagnoses of lumbar spinal stenosis, thoracic spine stenosis, and spondylosis, as well as chronic pain syndrome, strain of the lumbar region, and lumbar radiculopathy. Tr. 27 (citing Tr. 1137-1409, 1417-55). The ALJ noted that an x-ray of Plaintiff's lumbar spine in March 2022 showed a partial sacralization at the L5 level; and that an MRI and x-rays in August 2022 showed loss of cervical lordosis, mild thoracic disc degeneration, congenital canal stenosis, multilevel lumbar degenerative lumbar spondylosis, and sacralized L5 level. *Id*. (citing Tr. 1167, 1500, 1520-22). The ALJ explained, however, that "the diagnostic testing did not show any significant compression of nerve roots" and that electrodiagnostic testing in April 2022 "described the lumbar radiculopathy as mild.'" *Id*. (citing Tr. 1464). The ALJ noted that "despite some findings of tenderness, reduced range of motion, and diminished sensation of bilateral lower extremities, examinations produced normal findings, including no deformities, normal strength, intact sensation, full range of motion, ability to move all extremities well, no extremity edema, normal reflexes, negative straight leg raising test, normal pulses, and normal gait." *Id*. (citing Tr. 1166, 1224, 1500, 1559).

      The ALJ also noted Plaintiff's diagnosis of congestive heart failure with preserved ejection fraction, as well as her ER visits for chest pain, tachycardia, dizziness, chest pain, shortness of breath and nausea. Tr. 27 (citing Tr. 425-69, 481-668, 1138, 1460, 1462, 1471). The ALJ noted a chest x-ray in 2019 revealed

borderline cardiomegaly, a cardiac workup in 2020 showed normal left ventricular ejection fraction, a chest x-ray in March 2022 was negative, and Plaintiff had a negative stress test in September 2022, and that exams generally showed benign cardiovascular findings. Tr. 28. The ALJ noted at an office visit in February 2022 Plaintiff denied chest pain or shortness of breath. *Id*. (citing Tr. 1459).

The ALJ also noted lab results showed diabetes, and that Plaintiff had been diagnosed with diabetes with hyperglycemia and neuropathy. Tr. 28. The ALJ noted electrodiagnostic testing in April 2022 revealed polyneuropathy, that Plaintiff had not reported any symptoms of hypoglycemia, and that she "treated the problems with medications and insulin." *Id*. The ALJ noted a vision exam in 2022 did not find any retinopathy and "the diagnoses did not include other diabetes-related complications" and "despite a finding of diminished sensation of the left great toe, a foot exam found no ulcerations, no callous, or focal neurological deficit." *Id*. (citing Tr. 682, 1153, 1459, 1481).

Records throughout the period at issue, however, show uncontrolled diabetes, which Plaintiff's providers noted was likely contributing to and complicated by her other impairments. *See, e.g.*, Tr. 475, 1143, 1462, 1486. The ALJ provided minimal discussion of this impairment, however, and noted only that lab results showed diabetes with hyperglycemia and neuropathy. Tr. 28. An ALJ must consider all the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). Here, for example, in concluding "the diagnoses did not include other diabetes-related complications," the ALJ cited to one page of a May 2022 endocrinology consult, which showed Plaintiff did not have the complication of retinopathy; the finding the ALJ cited, however, is listed under the heading "diabetes complications," and

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

lists multiple *other* complications that she did have, including hypertension, dyslipidemia, and peripheral neuropathy. Tr. 1481. Indeed, later in the same visit the endocrinologist, Dr. Cheng, explained that Plaintiff had "uncontrolled Type II diabetes complicated by autonomic neuropathy, peripheral neuropathy, hypertension, hyperlipidemia and current smoking." Tr. 1486. The specialist noted that although Plaintiff had not used her insulin regularly in the past, she had been more consistent recently and her blood sugars had improved from 400-500 to 300+. Tr. 1480. He noted, however, that her diet options were limited by income and her exercise options were limited by fibromyalgia and chronic pain. Tr. 1481.

While the ALJ noted that Plaintiff "treated the problem with medications and insulin," Tr. 28, records through the period at issue show she had difficulty managing her symptoms, did not regularly check blood sugar, and at least some of the period at issue she was not adhering to her insulin protocol. *See, e.g.*, Tr. 378, 629, 976, 1480. While records show she was more consistent in her compliance with her diabetes treatment regimen in early 2022, the endocrinologist still noted in May 2022 that "her diabetes is severely uncontrolled and very concerning, and she has high risk for progression of diabetic complications." Tr. 1486. At the hearing the medical expert also testified that blood sugars in the 400-500s could produce many of Plaintiff's symptoms, and testified he was aware that Plaintiff had significant elevated blood sugars where she became dizzy and lightheaded, and that she needed to elevate her legs due to polyneuropathy; he testified he could not place a frequency on her need to do so, but acknowledged records described these symptoms. Tr. 83-84. Plaintiff's treating nurse practitioner also noted an A1c of 13.6 in June 2022. Tr. 1594.

Despite evidence including objective findings of uncontrolled diabetes, the ALJ only briefly mentioned diabetes in the decision. Tr. 28. As discussed above,

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

the ALJ's discussion of the record also minimizes and/or mischaracterizes evidence of complications. Accordingly, the ALJ's analysis is insufficient.

Additionally, while ALJ noted generally that Plaintiff treated her back pain and other issues with medications, Tr. 27, records from 2020 show she was taking up to four Percocet daily to control chronic pain from multiple impairments and she was under opiate pain contract with a pain management provider for impairments including chronic pain syndrome and long-term chronic use of opiate analgesic. *See, e.g.*, Tr. 470-71, 1142, 1465, 1559. The ALJ failed to discuss Plaintiff's treatment with and/or any side effects related to the daily opiate pain medication Plaintiff was prescribed to control pain from multiple impairments.

The ALJ failed to explain how objective findings are inconsistent with Plaintiff's symptom claims and also selectively cited objective evidence that tended to support the ALJ's findings while failing to discuss evidence that showed more mixed findings and/or tended to support Plaintiff's symptom claims, including evidence of uncontrolled diabetes, as well as her treatment with opiate medication for chronic pain during the period at issue. Accordingly, the ALJ's conclusion that Plaintiff's symptom claims were inconsistent with objective medical evidence is not supported by substantial evidence and this was not a clear and convincing reasons to discount Plaintiff's symptom claims.

2.      **Conservative Treatment.**

The ALJ also discounted Plaintiff's symptom claims because she had only conservative treatment. Tr. 27-28. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Here, the ALJ concluded "the evidence shows only conservative treatment, with no mention of chiropractic sessions, ongoing physical therapy, regular injections, use of electrical stimulation, or surgical consultations subsequent to the application

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

date." Tr. 27.  Plaintiff points out, however, that conservative treatment has not been successful, there is limited treatment for fibromyalgia aside from nerve pain medication and exercise, treatments such as trigger point injections have been recommended, and that Plaintiff was working on losing weight and controlling her diabetes so she can qualify for the more aggressive treatment that has been recommended.  ECF No. 9 at 19 (citing Tr. 92, 100, 1576).  At an April 2022 physiatry consult, for example, the specialist noted that an abnormal nerve conduction study showed evidence of polyneuropathy as well as evidence of mild acute on chronic left L5/S1 radiculopathy, and the specialist recommended further imaging, referral to physical therapy, a trial of epidural steroid injections, and referral to neurosurgery; and he noted her use of narcotic pain medicine for ten years.  Tr. 1464-65.

      Additionally, while the ALJ concluded there were not any surgery consults, records show a neurosurgery consult in August 2022.  Tr. 1498-99.  Plaintiff was assessed for lumbar back pain, progressive urinary and bowel incontinence, as well as lower extremity numbness.  *Id*.  The provider noted that there was no evidence of high-grade stenosis or cord compression, but also explained that "her symptoms are very concerning" and required further work up, as well as referral to bariatric and breast surgery for discussion of whether she is a candidate for reduction and/or gastric bypass.  Tr. 1502.  In September 2022, another provider noted surgery was not an option until Plaintiff's diabetes was under control, as uncontrolled diabetes increased the risk of post operative infection and complications.  Tr. 1510.

      The ALJ's dismissal of Plaintiff's symptom claims because she has had only conservative treatment is not supported by substantial evidence, and this was not a clear and convincing reason to discount her symptoms claims.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

### 3. *Activities.*

The ALJ also determined Plaintiff's symptom claims were inconsistent with her daily activities of. Tr. 27. An ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.902(a). Here, the ALJ found "the [Plaintiff's] daily activities suggest her conditions are not as limiting as alleged. For example, she reported having the ability to get her son ready for school, prepare meals, run errands, watch television, and talk on the phone." Tr. 27. The ALJ did not explain how such daily activities were inconsistent with Plaintiff's testimony about the severity of her symptoms, however, and none of these activities are inconsistent with Plaintiff's allegations of chronic pain and other symptoms preventing her from working a full-time job during the period at issue.

It is well-established that a claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603. Further, the Ninth Circuit has repeatedly found that the ability to perform these kinds of activities is not inconsistent with the inability to work:

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

At the hearing, Plaintiff testified she no longer goes to the store, does not perform housework such as cleaning, and cannot shower regularly due to pain as

ORDER GRANTING PLAINTIFF'S MOTION . . . - 12

well as numbness in her legs. Tr. 88-89. She testified as of her alleged onset date she was having pain, tingling in her legs and polyneuropathy, and that her symptoms have progressed with increasing loss of sensation, incontinence, and falls. Tr. 89. She testified that she lies down for a considerable part of the day due to pain and neuropathy. Tr. 98. In 2022, Plaintiff's treating provider also noted Plaintiff needed to lie down during the day for pain and numbness; and her provider explained that side effects of medications caused Plaintiff to feel fatigued, groggy, and lightheaded. Tr. 1594.

The ALJ's conclusion that Plaintiff's activities were inconsistent with her symptom claims is not supported by substantial evidence. This was also not a clear and convincing reason to discount her symptoms claims.

The ALJ failed to provide clear and convincing reasons supported by substantial evidence to reject Plaintiff's symptom claims. Upon remand the ALJ is instructed to reevaluate Plaintiff's symptom claims in the context of the entire record.

B.      **Medical Opinions.**

Plaintiff contends the ALJ improperly evaluated the opinions of Andrea DeLong, ARNP. ECF No. 9 at 8-13.

For claims filed on or after March 27, 2017, pursuant to the applicable regulations, the ALJ does not give any specific evidentiary weight to medical opinions or prior administrative medical findings. 20 C.F.R. § 416.920c(a). Instead, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a) and (b).

The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors

ORDER GRANTING PLAINTIFF'S MOTION . . . - 13

(such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program). 20 C.F.R. § 416.920c(c)(1)-(5). Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2). The ALJ may explain how the ALJ considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.* Supportability and consistency are explained in the regulations:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).

The Ninth Circuit has addressed the issue of whether the regulatory framework displaces the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the 2017 regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* at 788-89, 792. The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source

ORDER GRANTING PLAINTIFF'S MOTION . . . - 14

has examined the claimant or merely reviewed the claimant's records. *Id.* at 790, 792. Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.* at 792.

### 1. Ms. DeLong.

In April 2021, Plaintiff's treating provider Andrea DeLong, ARNP, completed a Documentation Request for Medical Condition and Residual Functional Capacity form for Plaintiff on behalf of Washington State DSHS. Tr. 1411-13. Ms. DeLong explained Plaintiff's diagnoses were fibromyalgia, chronic low back pain, costochondritis, congestive heart failure, type 2 diabetes, anxiety and depression. Tr. 1411. Ms. DeLong opined Plaintiff's medical conditions limited her ability to work, look for work, or prepare for work; and that Plaintiff was limited in her ability to lift heavy objects, sit or stand for long periods of time, and in her ability to bend over and reach above. *Id.* Ms. DeLong opined that due to her limitations Plaintiff was limited to participating in 11-20 hours of work activity a week. *Id.* She opined Plaintiff was severely limited in her ability to lift and carry, defined as unable to lift at least 2 pounds or unable to stand or walk. Tr. 1412. She opined Plaintiff's condition was permanent and the treatment plan included medications and referral to specialists. *Id.*

In August 2022, Ms. DeLong completed a Documentation Request for Medical Condition and for Medical or Disability Condition form for Plaintiff on behalf of Washington State DSHS. Tr. 1414-16. She explained Plaintiff had spinal stenosis of lumbar region with neurogenic claudication, bilateral back pain, and congenital canal stenosis; and that these were supported by objective medical evidence. Tr. 1414. Ms. DeLong opined Plaintiff's medical conditions limited her ability to work, look for work, or prepare for work; and that Plaintiff was limited in her ability to lift heavy objects, to sit or stand for long periods of time, to bend

over, reach above, and to make repetitive motions. *Id*. She opined due to her limitations Plaintiff was unable to participate in work activity at that time. *Id*. She opined Plaintiff was severely limited in her ability to lift and carry. Tr. 1415. She opined Plaintiff's condition was permanent and treatment plan included a consult with neurosurgery later in the month. *Id*.

In December 2022, Ms. DeLong completed a Medical Report form on behalf of Plaintiff. Tr. 1594-96. She noted she had treated Plaintiff since 2010 and that her diagnoses included type two diabetes with hyperglycemia, polyneuropathy, spinal stenosis, chronic midline low back pain, fibromyalgia, and bilateral carpal tunnel. Tr. 1594. She explained Plaintiff's symptoms include dizziness, fatigue, numbness and tingling from low back to bilateral lower extremities, lower extremity weakness, numbness, tingling, and "weakness of hands, involuntary movement of hands." *Id*. She noted relevant clinical findings and test results included cervical, thoracic, and lumbar MRI; an EMG of the bilateral lower extremities; and high A1c of 13.6 in June 2022. *Id*. She opined Plaintiff had to lie down during the day for "8 hours due to pain [and] numbness." *Id*. She noted treatment had included medication and physical therapy and that side effects of medications caused Plaintiff to feel fatigued, groggy, and lightheaded. *Id*. She indicated Plaintiff's conditions were reasonably likely to cause pain, that her prognosis was fair, and that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate as it would "increase pain [due to] degeneration." *Id*. Ms. DeLong opined if Plaintiff attempted to work full time, she would likely miss an average of 4 or more days of work per month because she was "unable to be up and moving [due to] pain. Would need to lie down several times a day for multiple hours at a time." Tr. 1595. She opined due to her medical condition, Plaintiff was severely limited, defined on the form as unable to perform the demands of even sedentary work. *Id*. She opined Plaintiff had manipulative

ORDER GRANTING PLAINTIFF'S MOTION . . . - 16

limitations and should never reach, handle, or finger with her right and left upper extremities; and that based on the cumulative effect of all limitations, Plaintiff would likely be off task and unproductive over thirty percent of a 40-hour workweek. *Id*. Ms. DeLong indicated she had administered a tender point exam and Plaintiff had at least 11 of 18 fibromyalgia tender points. Tr. 1596.

The ALJ found Ms. DeLong's opinions unpersuasive because they were inconsistent with the record, she overstated Plaintiff's limitations, and her opinions were not supported by objective findings and were internally inconsistent. Tr. 30.

Plaintiff contends the ALJ failed to properly consider the consistency or supportability of ARNP DeLong's assessed limitations; and the ALJ mischaracterized the record by citing to unremarkable findings when the record as a whole showed progression of Plaintiff's impairments as well as consistent objective support for Ms. DeLong's assessments, including physical exam findings, imaging and other objective testing, along with recommendations for more aggressive treatment. ECF No. 9 at 9-13. Defendant contends the ALJ reasonably evaluated Ms. DeLong's opinions. ECF No. 11 at 11.

Having determined a remand is necessary to reassess Plaintiff's subjective complaints, the Court declines to further address this issue. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

Upon remand the ALJ is instructed to reconsider all medical opinion evidence using the factors required by the regulations. The ALJ will adopt the limitations given by a provider or provide reasons supported by substantial evidence to reject them.

C. **Step Three and Step Five.**

Plaintiff contends the ALJ also failed to conduct an adequate analysis at step three, failed to consider listing 14.09D for fibromyalgia, and failed to find Plaintiff disabled as meeting or equaling a listing; and that the ALJ also failed to conduct an adequate step five analysis. ECF No. 9 at 13-16, 10.

Having determined a remand is necessary to reassess Plaintiff symptom claims, the Court also declines to reach these issues. Upon remand, the ALJ is instructed to perform the sequential analysis anew, including reconsidering step-three and step-five.

## VIII.  CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and not free of harmful legal error. The Court finds further proceedings are necessary to resolve conflicts in the record and to further develop the record.

On remand, the ALJ will obtain all updated medical records and reevaluate the medical evidence of record. The ALJ is instructed to reassess Plaintiff's symptom claims in light of the record as a whole, to reperform the sequential analysis making new findings on each of the five steps of the sequential evaluation process, and to reassess all medical opinion evidence using the factors required by the regulations, taking into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion to reverse, **ECF No. 9**, is **GRANTED**.

2. Defendant's Motion to affirm, **ECF No. 11**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

5. The District Court Executive is directed to update the docket sheet to reflect the substitution of Martin O'Malley as Defendant and to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED September 30, 2024.



_____
JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE